United States District Court
Southern District of Texas
**ENTERED**
April 14, 2021
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| HOUSTON CIGAR ALLIANCE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-20-4115 |
| | § | |
| OFFICIAL HOUSTON CIGAR WEEK | § | |
| LLC and ELIAS PAPILLION, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER ENTERING FINDINGS OF FACT AND
CONCLUSIONS OF LAW GRANTING THE PLAINTIFF'S APPLICATION FOR
PRELIMINARY INJUNCTION AND DENYING THE DEFENDANTS' APPLICATION**

This trademark-infringement case requires the court to decide which of two competing social clubs of cigar smokers, primarily African American, was the first to use two disputed marks in commerce. The plaintiff, Houston Cigar Alliance, is a partnership made up of four cigar clubs and one cigar manufacturer. The Alliance organizes and promotes cigar events in Houston, using the trademarks "Houston Cigar Week" and "Houston Cigar Alliance." Its marquee event is the "Houston Cigar Week," a week of ticketed and sponsored cigar-related events and parties in Houston.

Elias Papillion was a member of the Alliance until he was voted out after allegations that he inappropriately handled ticket proceeds from an Alliance event. Shortly after Papillion's exit, in late October 2019, the Alliance reorganized under a formal partnership agreement and began marketing its 2020 Houston Cigar Week, which was later rescheduled to 2021 due to COVID-19. About a year later, in November 2020, Papillion sent the Alliance a message claiming to own the "Houston Cigar Week" trademark. He then formed a business named the "Houston Cigar Alliance

LLC," advertised that he was the new manager of the Alliance, and promoted a competing "Official" Houston Cigar Week event that he scheduled for two weeks before the Alliance event.

The Alliance moved to enjoin Papillion, and the competing organization he founded, Official Houston Cigar Week LLC, from using the trademarks "Houston Cigar Week" and "Houston Cigar Alliance." The defendants cross-moved for their own preliminary injunction. The court held a bench trial in March 2021.

The parties agreed that they are marketing ticketed events and gatherings that directly compete. The parties also agreed that the two disputed trademarks are protectable and have created and will continue to create customer confusion. The dispute is whether the plaintiff first used the Houston Cigar Week and the Houston Cigar Alliance marks in commerce.

The credible evidence in the record shows, and the court finds and concludes, that the plaintiff, the Houston Cigar Alliance, was the first to use the names Houston Cigar Week and Houston Cigar Alliance in commerce. The defendants, Official Houston Cigar Week LLC and Elias Papillion, later took steps to appear to be the first user and owner of the marks, such as by filing assumed-name papers and corporate-formation documents with the State of Texas, and filing a federal trademark application shortly before the plaintiff did. These steps, however, did not establish first use of the marks. To the contrary, the court finds and concludes that the plaintiff was the first to use the marks and is entitled to an injunction to protect its right to use them free of the defendants' confusingly similar competing marks.

As explained in detail below, the record evidence and the applicable law lead the court to find and conclude that the Alliance's witnesses credibly testified and produced reliable evidence of the earlier use of the Houston Cigar Alliance and Houston Cigar Week marks. By contrast, the testimony of the defendant, Elias Papillion, was inaccurate, inconsistent, and incredible in his

explanations of the steps he took to make it look as if he and Official Houston Cigar Week LLC were the earlier users. They were not.

The plaintiff's earlier use entitles the plaintiff to exclusive use. The evidence shows, and the court finds and concludes, that the defendants' use of the similar marks has caused customer confusion, cost the plaintiff important sponsorships, and, unless enjoined, will continue to result in irreparable harm. The court grants the plaintiff's motion to enjoin the defendants from using either of the disputed marks. (Docket Entry No. 15). The court denies the defendants' cross-motion for an injunction. The plaintiff must file a proposed preliminary injunction order, conditioned on posting a $2,000.00 surety bond, no later than April 16, 2021.

The findings and conclusions, with explanation, are set out below.[1]

## I.    The Evidence in the Record

On March 29 and 30, 2021, the court held a preliminary injunction bench trial by Zoom.[2] The Alliance called Cerrone Grant and Errick Presley as witnesses. Grant is the founder of Spades Cigars, a member of the Alliance. Presley is the founder of Smoke One Drink One (SODO), also a member of the Alliance. The defendants called Elias Papillion and Kimberly Gilbert. Papillion is the founder of Stixx and Stonez, a former member of the Alliance, and Official Houston Cigar Week LLC. Gilbert is the founder of Duchess of the Leaf, a women's cigar-smoking social club, and the vice president of Stixx and Stonez.

At the hearing, the parties submitted, and the court admitted, 62 exhibits.  The Alliance's admitted exhibits are:

---

[1] Any findings of fact that are more properly conclusions of law are so deemed. Any conclusions of law that are more properly findings of fact are so deemed.

[2] The court finds that the technology allowed a clear, efficient, and thorough presentation of the witnesses and the relevant evidence, and that the remote presentation of the proceedings did not infringe on the rights of the parties or cause prejudice.

- assorted posts from Houston Cigar Alliance's Instagram account, (Docket Entry No. 47-1);

- selected pages from houstoncigarweek.org, (Docket Entry No. 47-2);

- a November 24, 2019, receipt for the creation of the Houston Cigar Week business Facebook page, (Docket Entry No. 47-3);

- a screenshot of a January 11, 2020, post from the _houston_cigar_alliance Instagram account, (Docket Entry No. 47-4);

- a screenshot of a prior version of the _houston_cigar_alliance Instagram acount and a Houston Cigar Alliance advertisement, (Docket Entry No. 47-5);

- a screenshot of a photograph posted on the houstoncigarweek Instagram account, (Docket Entry No. 47-6);

- a screenshot of an advertisement posted on the houstoncigarweek Instagram account, (Docket Entry No. 47-7);

- a screenshot of an advertisement posted on the houstoncigarweek Instagram and Facebook pages, (Docket Entry No. 47-8);

- assorted screenshots from the houstoncigarweek Instagram account, (Docket Entry No. 47-9);

- a screenshot of a post on the houstoncigarweek Instagram account, (Docket Entry No. 47-10);

- a screenshot of an advertisement posted on the houtsoncigarweek Instagram, (Docket Entry No. 47-11);

- a screenshot of a direct message from Elias Papillion to the houstoncigarweek Instagram account, (Docket Entry No. 47-12);

- an October 27, 2020, cease-and-desist letter from the Alliance to Elias Papillion, (Docket Entry No. 47-13);

- a trademark application asserting Elias Papillion's intent to use the term "Houston Cigar Week," (Docket Entry No. 47-14);

- the limited liability company certificate of formation for Houston Cigar Week LLC from the Texas Secretary of State, (Docket Entry No. 47-15);

- a November 5, 2020, cease-and-desist letter sent from the Alliance to Elias Papillion, (Docket Entry No. 47-16);

- selected posts from the houstoncigar_week Instagram account dated November 6 and 12, 2020, (Docket Entry No. 47-17);

- a screenshot of a previous version of Papillion's houston.cigar.alliance Instagram account, (Docket Entry No. 47-18);

- a February 22, 2021, screenshot of Papillion's houstoncigaralliance_ Instagram account, (Docket Entry No. 47-19);

- a screenshot from Papillion's houstoncigar_week Instagram account, (Docket Entry No. 47-20);

- an announcement posted on Papillion's Stixx and Stonez Cigars Facebook page, (Docket Entry No. 47-21);

- a screenshot of a post from Papillion's houstoncigar_week Instagram account, (Docket Entry No. 47-22);

- the limited liability company certificate of formation for Houston Cigar Alliance LLC from the Texas Secretary of State, (Docket Entry No. 47-23);

- a message from a customer to the Alliance in November 2020, (Docket Entry No. 47-24);

- a message from a customer to the Alliance in November 2020, (Docket Entry No. 47-25);

- a Facebook message from a customer to the Alliance in December 2020, (Docket Entry No. 47-26);

- a message from a customer to the Alliance, (Docket Entry No. 47-27);

- a screenshot of an email chain between the Alliance and a representative for Marsau and LaTisha Scott, (Docket Entry No. 47-28);

- a screenshot of an advertisement on the houstoncigarweek Instagram account and an Event Ambassadors Agreement form, (Docket Entry No. 47-29);

- a screenshot of a post on Papillion's stixx_and_stonez Instagram account, (Docket Entry No. 47-30);

- a collection of text messages sent by Five Central Houston on January 6, 2021, (Docket Entry No. 47-31);

- the partnership agreement for Houston Cigar Alliance, (Docket Entry No. 47-32);

- selected screenshots showing the creation date of the houstoncigarweek Instagram account, (Docket Entry No. 47-33);

- selected screenshots showing the defendants' Eventbrite and houstoncigar_week Instagram, (Docket Entry No. 47-34);

- an advertisement for the Alliance's 2018 Houston Cigar Smoke Fest event, (Docket Entry No. 47-35);

- selected screenshots taken on March 30, 2021, of a post on Papillion's stixx_and_stonez Instagram account, (Docket Entry No. 47-36);

- a screenshot taken on March 29, 2020, of two posts on Papillion's stixx_and_stonez Instagram account, (Docket Entry No. 47-37);

- a screenshot taken on March 29, 2020, of a a post on Papillion's stixx_and_stonez Instagram account, (Docket Entry No. 47-38);

- a screenshot of a post on Papillion's stixx_and_stonez Instagram account, (Docket Entry No. 47-39);

- selected excerpts from Papillion's deposition, (Docket Entry No. 47-40); and

- a Facebook post from Papillion's Stixx and Stonez Cigars Facebook page, (Docket Entry No. 47-41).

The defendants' admitted exhibits are:

- minutes from the August 21, 2018, Houston Cigar Alliance meeting, (Docket Entry No. 52);

- assorted posts from Papillion's stixx_and_stonez Instagram account, (*id.*);

- minutes from the October 16, 2018, Houston Cigar Alliance meeting, (*id.*);

- assorted posts from Papillion's houstoncigar_week Instagram account, (*id.*);

- screenshots from houstoncigarfestival.com, (*id.*);

- the limited liability company certificate of formation for Houston Cigar Association LLC from the Texas Secretary of State, (*id.*);

- the assumed-name certificate for Houston Cigar Alliance from the Harris County Clerk, (*id.*);

- the Employer Identification Number for Houston Cigar Alliance LLC, (*id.*);

7

- the Employer Identification Number for Houston Cigar Week, (*id.*);

- the Texas sales and use tax permit for Houston Cigar Week LLC, (*id.*);

- the Employer Identification Number for Official Houston Cigar Week, (*id.*);

- the Employer Identification Number for Houston Cigar Association, (*id.*);

- the limited liability company certificate of formation for Official Houston Cigar Week LLC from the Texas Secretary of State, (*id.*);

- the limited liability company certificate of formation for Houston Cigar Alliance LLC from the Texas Secretary of State, (*id.*);

- the assumed-name certificate for Houston Cigar Association from the Harris County Clerk, (*id.*);

- the assumed-name certificate for Houston Cigar Week from the Texas Secretary of State, (*id.*);

- the assumed-name certificate for Houston Cigar Association from the Texas Secretary of State, (*id.*);

- the assumed name certificate for Houston Cigar Alliance from the Texas Secretary of State, (*id.*);

- the assumed-name certificate for Official Houston Cigar Week from the Texas Secretary of State, (*id.*);

- a trademark application for Houston Cigar Week filed with the U.S. Patent and Trademark Office, (*id.*);

- the limited liability company certificate of formation for Houston Cigar Week LLC from the Texas Secretary of State, (*id.*); and

8

- assorted advertisements for the Official Houston Cigar Week on May 12–16, 2021, (*id.*).

## II.    Findings of Fact

### A.    The Houston Cigar Alliance

The Houston Cigar Alliance is made up of five partners, Smoke One Drink One (SODO), Spades Cigars, Westside Smokers, BIC Crew, and For Smokers Only. (Docket Entry No. 47-2 at 3; Docket Entry No. 47-32 at 27). Spades Cigars is a cigar-production company; the other partners are cigar-smoking social clubs that organize events for their members.

The Alliance was formed in 2018, without a written partnership agreement, so that the partners could coordinate, hold, and organize larger events for the cigar-smoking community in Houston. The Alliance organizes and hosts free weekly events and two large, ticketed, annual events, Mid-Fest and Houston Cigar Week. The Alliance makes money on both events from customers who pay for tickets and sponsors that pay to advertise in the events. Sponsors include tobacco companies, liquor producers, cigar venues, lounges, and spas.

When it began in 2018, the Alliance's members included SODO, Stixx and Stonez, BIC Crew, Westside Smokers, and For Smokers Only. (*See* Docket Entry No. 47-35). The group was originally formed to hold a large event for the Houston African-American cigar-smoking community. The Alliance held and organized the Houston Cigar Smoke Fest in August 2018. (*See id.*). The informal Alliance also hosted an event in May 2019 called Mid-Fest, and another Houston Cigar Smoke Fest in August 2019.

The informal partnership lasted until October 2019. Papillon testified that during that period, the Alliance chose event names as a group; no one club was in charge. Grant similarly testified that the partnership spread responsibilities evenly among the members.

Presley, Papillion, and Gilbert testified that the informal group ended when Papillion and his group, Stixx and Stonez, were voted out. Presley testified as to the reasons that occurred. Papillion had created Eventbrite pages for Alliance events and then linked the Eventbrite pages to email addresses and bank accounts that Papillion controlled. This gave Papillion exclusive access to Alliance emails and funds, including ticket sales proceeds. Presley testified that when the Alliance confronted Papillion about the money, he would not transfer, share, or relinquish control over the email addresses, bank accounts, or funds. Presley testified that this led the Alliance to vote Papillion and Stixx and Stonez out of the group.

Gilbert testified that she and Papillion were voted out of the informal Alliance at the same time. She testified that the Alliance did not inform them of the vote until after it was over. Both Gilbert and Papillion testified that he did not take ticket proceeds from Alliance events. Papillion suggested that the Alliance voted him out because he had previously belonged to one of the member clubs, Westside Smokers, which was unhappy when he left and started his own cigar smoking social club, Stixx and Stonez.

The court finds that the Alliance no longer trusted Papillion or Gilbert and voted them out on that basis. The result was the formation of a new, formal Houston Cigar Alliance partnership. On October 29, 2019, SODO, SpadesCigars, Westside Smokers, BIC Crew, and For Smokers Only signed a formal partnership agreement using the Houston Cigar Alliance name.[3] (Docket Entry No. 47-32). Grant and Presley testified that, on the same day, the Houston Cigar Alliance announced on Facebook and Instagram that Papillion was no longer affiliated with it.

---

[3] Gilbert testified that she and Papillion opposed allowing Spades Cigars into the Alliance because Spades Cigars is a cigar brand, not a cigar-smokers' club or social group.

B.      **The Alliance Plans and Announces Houston Cigar Week**

After entering the formal partnership agreement in October 2019, the Alliance met weekly in November. The Alliance planned events for the following year, including a customer- and vendor-appreciation event in January 2020 and Mid-Fest in May 2020. The Alliance began marketing Mid-Fest in January 2020. (Docket Entry No. 47-5). The Alliance also discussed a larger event, called Houston Cigar Week, to take place in July 2020.

Grant testified that he coined the phrase "Houston Cigar Week" after attending the Atlanta Cigar Week event in 2019. Grant proposed the "Houston Cigar Week" name for the Alliance's marquee event. In November 2019, the Alliance voted to adopt the name. On November 24, 2019, Grant created Facebook and Instagram accounts for the Houston Cigar Week. (Docket Entry Nos. 47-3, 47-33). Grant testified that the Facebook and Instagram accounts were critical to the Alliance's event advertisements. Most potential customers for Alliance events are notified, and the bulk of their tickets are marketed and sold, through Facebook and Instagram accounts linked to the Alliance website.

Grant testified that, on November 25, 2019, he began to market Houston Cigar Week, in person and through text messages and emails, to vendors, venues, sponsors, and "ambassadors," who are social-media "influencers" and local celebrities who promote the event. Grant sent messages to potential sponsors, venues, and hospitality groups, including Carolina Blue Cigars, Definition Cigars, Cigar Porn, Sweet Lips Cigars, Highway Vodka, Taylor's Nightclub, Moody Gardens, and Alife Hospitality Group, which owns Prospect Park, Jet Lounge, and the Engine Room. Grant also spoke with well-known Houston personalities about promoting the Alliance's Houston Cigar Week, including Marcus Davis, owner of the Breakfast Klub; Derek Holmes,

chairman of 100 Black Men of Metropolitan Houston; and several local radio personalities, such as DJ Phil, DJ Remarkable, DJ Eric Loftin, and DJ Branch.

The Alliance planned to hold its Houston Cigar Week in July 2020, but in early 2020 moved the event to 2021 because of COVID-19. Throughout 2020, the Alliance continued to meet twice each month to plan the event. In September 2020, Grant took 50 members of the Houston cigar-smoking social community to the Atlanta Cigar Week so that they could see a model for Houston Cigar Week. On October 27, 2020, the Alliance announced the dates for the rescheduled Houston Cigar Week: May 26–30, 2021. (Docket Entry No. 47-7). The Alliance also launched a website for the event, houstoncigarweek.org, and announced several sponsors that had already committed support. (Docket Entry Nos. 47-1, 47-2, 47-9, 47-10, 47-11).

The Alliance allowed customers to register for the event on Eventbrite but required them to buy tickets on the Alliance website. (Docket Entry No. 47-2). After announcing the event, additional sponsors, ambassadors, and venues contacted the Alliance about potential partnerships. (Docket Entry Nos. 47-8, 47-9, 47-10). The Alliance continued to announce new sponsorships, venues, ambassadors, and other partnerships throughout November and December 2020. (Docket Entry Nos. 47-2, 47-9, 47-10, 47-11).

### C.  Papillion Claims Ownership of Houston Cigar Week and Houston Cigar Alliance

On November 24, 2020, Papillion sent a private message to the Alliance's Houston Cigar Week Instagram account, claiming to be the "official trademark owner" of the "Houston Cigar Week" trademark. (Docket Entry No. 47-12). Papillion demanded that the Alliance get his permission before using the trademark. (*Id.*). Three days later, the Alliance responded with a cease-and-desist letter. (Docket Entry No. 47-13). The same day, Papillion filed a trademark application

for "Houston Cigar Week" with the U.S. Patent and Trademark Office.[4] (Docket Entry No. 47-14). Shortly after, he filed corporate-formation documents with the Texas Secretary of State for OfficialHoustonCigarWeek LLC. (Docket Entry No. 47-15). The corporate-formation documents included a certificate of formation and an assumed-name certificate. (Id. at 2, 4). Papillion also created an Eventbrite page for what he called the "OfficialHoustonCigarWeek," which he scheduled for May 5–8, 2021.

Shortly after, Grant took screenshots of an Instagram account that Papillion created, named "houstoncigar_week," advertising a competing "Houston Cigar Week" event. (Docket Entry No. 47-34). The Instagram page was advertised as "THE OFFICIAL HOME OF THE HOUSTON CIGAR WEEK 2021." (*Id.* at 2). A week later, Papillion moved the dates of his event to May 12–16, 2021, to take place before the already scheduled Alliance event. (*Id.* at 3). Papillion also created a website, "houstoncigarweek.com," to advertise his competing event. (Docket Entry No. 47-17). Papillion has continued to advertise his competing Houston Cigar Week event. (Docket Entry Nos. 47-17, 47-20, 47-34). The houstoncigar_week Instagram account shows dozens of posts advertising "The Official Houston Cigar Week," with details on how to purchase tickets. (Docket Entry No. 47-17 at 2).

On December 20, 2020, the Alliance filed this lawsuit, and on December 21 served Papillion with the summons and complaint. (Docket Entry Nos. 1, 8). The same day, Papillion filed the assumed-name certificate with the Texas Secretary of State under the name "Houston Cigar Alliance," which he identified as owned by OfficialHoustonCigarWeek LLC. (Docket Entry No. 47-15 at 6). Papillion then posted on his "stixx_and_stonez" Instagram account that "Houston Cigar Alliance is now Under New Management." (Docket Entry No. 47-21). The post stated that

---

[4] Grant testified that the Alliance submitted its trademark application for Houston Cigar Week on October 24, 2020.

"Houston Cigar Alliance is now owned by Official Houston Cigar Week LLC." (*Id.*). Papillion also posted a photo of the Texas assumed-name certificate he had filed. (Docket Entry No. 47-22). Papillion then began using the mark "Houston Cigar Alliance" in advertising for his competing Houston Cigar Week event and his competing organization.

Around the same time, Papillion created a "houston.cigar.alliance" Instagram account, (Docket Entry No. 47-18), which was later deleted. Papillion later created a "houstoncigaralliance_" Instagram account, which he uses to advertise his Houston Cigar Week and Stixx and Stonez events. (Docket Entry No. 47-19). As explained below, Papillion later changed the content of posts on his stixx_and_stonez Instagram account to manufacture evidence of his senior use of the trademarks.

### III.    The Legal Standards

#### A.    Preliminary Injunction

A preliminary injunction is an "extraordinary remedy." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 536 (5th Cir. 2013).  A court may grant an application for a preliminary injunction "only if the movant establishes (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest."  *Id.* at 536–37 (quoting *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)).

#### B.    Common-Law Trademark Protection

Trademark ownership "is established by use, not by registration."  *Union Nat. Bank Tex., Laredo, Tex. v. Union Nat. Bank Tex., Austin, Tex.*, 909 F.2d 839, 842 (5th Cir. 1990).  This case involves an unregistered trademark.  Unregistered marks are "governed generally by the same

principles that qualify a mark for registration under the Lanham Act." *Bd. Supervisors La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008).  A plaintiff establishes trademark-infringement liability by showing that the defendant "'uses in commerce any word, term, name, symbol, or device'" that is "'likely to cause confusion, or to cause mistake'" about the "'origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.'"  *See Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008) (quoting 15 U.S.C. § 1125(a)(1)(A)).  The court first considers whether the plaintiff has a "protectable right in the mark," and then whether there is a "likelihood of confusion between the marks." *Id.* (citing *Sec. Ctr., Ltd. v. First Nat'l Sec. Ctrs.*, 750 F.2d 1295, 1298 (5th Cir. 1985)); *see also Perry v. H.J. Heinz Co. Brand, LLC*, No. 20-30418, at 5 (5th Cir. Apr. 12, 2021) ("[The plaintiff must] show ownership of a valid trademark and that [the defendant] used the mark or a similar mark in a way that created a likelihood of confusion.").

Before issuing an injunction for trademark infringement, the court must consider whether (1) the claimed mark is eligible for protection, (2) the party seeking protection is the mark's senior user, (3) there is a likelihood of confusion between the plaintiff's mark and the defendant's mark, and (4) this likelihood of confusion will cause the plaintiff irreparable injury for which there is no adequate legal remedy. *See id.* (quoting *Union Nat'l Bank*, 909 F.2d at 844).

## IV.    Reasons and Findings of Fact

### A.    Eligibility for Protection

To be eligible for protection, a mark must be "capable of distinguishing the applicant's goods from those of others." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). The parties agree, and the record confirms, that "Houston Cigar Week" and "Houston Cigar Alliance" are eligible for protection.

B.    **Senior User**

The parties vigorously dispute who is the senior user of both the Houston Cigar Week and Houston Cigar Alliance marks. The first entity to use a mark in commerce is "generally held to be the 'senior' user and is entitled to enjoin other 'junior' users from using the mark, or one that is deceptively similar to it." *Union Nat. Bank Tex.*, 909 F.2d at 842.  Priority of use, not registration, gives an entity trademark rights.  *See* J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 16:1.50 (5th ed. 2021) ("[I]t is not registration, but only actual [first] use of a designation as a mark that creates rights and priority over others."); *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 100 (1918) ("The general rule is that, as between conflicting claimants to the right to use the same mark, priority of appropriation determines the question").

Ownership of a mark "requires a combination of both appropriation and use in trade." *See Blue Bell, Inc. v. Farah Mfg. Co., Inc.*, 508 F.2d 1260, 1264–65 (5th Cir. 1975).  Ownership accrues "when goods bearing the mark are placed on the market." *Id.* (citation omitted).  "Such use need not have gained wide public recognition, . . . and even a single use in trade may sustain trademark rights if followed by continuous commercial utilization." *Id.* (citations omitted).  But "mere preparation and publication of future plans do not constitute use in commerce." *Lyons v. Am. Coll. of Veterinary Sports Med. & Rehab.*, 859 F.3d 1023, 1030 (Fed. Cir. 2017).  The question of ownership "remains one to be decided on the facts of each case, and that evidence showing, first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark, is competent to establish ownership." *Blue Bell, Inc.*, 508 F.2d at 1264–65.

1.      **The Houston Cigar Week Trademark**

The great weight of the credible evidence shows, and the court finds, that the Alliance was the first, or senior, user of the Houston Cigar Week mark. It is undisputed that the Alliance has been continuously marketing the Houston Cigar Week event since November 2019. (Docket Entry No. 15-1 at ¶¶ 4, 5, 7; Docket Entry Nos. 15-4, 15-5). The Alliance opened "Houston Cigar Week" Instagram and Facebook accounts on November 24, 2019. (Docket Entry Nos. 47-3, 47-33). Grant testified that from November 25, 2019, to the present, he has solicited venues, sponsors, ambassadors, and customers for Houston Cigar Week. He testified that shortly after creating the Houston Cigar Week social-media pages, he reached out to Moody Gardens about hosting the Houston Cigar Week event in July 2020.  The date was later pushed to 2021 due to COVID-19. Grant's efforts culminated in an official October 2020 announcement that the Alliance's Houston Cigar Week would take place from May 26 to 30, 2021. (Docket Entry No. 47-7).

The record contains numerous announcements that the Alliance entered into agreements with venues, hotels, ambassadors, and other sponsors for the Houston Cigar Week event. (Docket Entry Nos. 47-9, 47-10, 47-11). This clear evidence firmly establishes that the Alliance began continuously using the "Houston Cigar Week" mark in commerce in November 2019. *See Alamo Area Mut. Hous. Ass'n, Inc. v. Lazenby*, No. 5:17- CV-634, 2017 WL 7052253, at *7 (W.D. Tex. July 28, 2017) (finding "substantial evidence of actual and continuing use" when, within nine months, the plaintiff published a video of the mark, signed contracts to broadcast the mark, solicited and acquired sponsorships, and started a social-media page to advertise using the mark).

The defendants submitted three exhibits that, they argue, show first use.  All three are posts on Papillion's stixx_and_stonez Instagram account.  These posts were the subject of extended examination in the preliminary-injunction hearing.  They are insufficient to show first use.

The Alliance filed a motion to exclude these three posts, arguing that they had been edited after the filing of this lawsuit. (Docket Entry No. 41). The court denied the motion because, in this bench trial, editing or alteration to prevent the other side from obtaining helpful evidence goes to evidentiary weight rather than admissibility. The court now finds and concludes that the posts are entitled to no or minimal probative weight as support for the defendants' prior use. Instead, the posts are credible evidence that Papillion manipulated his stixx_and_stonez Instagram account posts to prevent the Alliance from obtaining favorable evidence and instead to manufacture evidence supporting the defendants' position.

Even considering the three social-media posts, they do not amount to continuous commercial use. The posts, collectively, were viewed less than 50 times. (Docket Entry Nos. 47-37, 47-38, 49-1 at 23). The phrase "Houston Cigar Week" appears in the caption for each post. These posts were created between October 30 and November 3, 2019. It was not until a year later, on October 25, 2020, that the words "Houston Cigar Week" appeared again on one of Papillion's Instagram accounts. (Docket Entry No. 43-4). This minimal use over an extended period does not qualify as commercial use. *See Perry*, No. 20-30418, at 8 ("[The plaintiff's] online presence was limited to a Facebook page with pictures of [the product] on it. Unlike [the defendant], he has never used the Internet for sales or large-scale advertising."); *see also Burlington N. Santa Fe Corp. v. Purdy*, 204 F.3d 1114 (5th Cir. 1999) ("Nominal or token sales to personal friends do not constitute a bona fide commercial use of a trademark.").

Papillion testified that he used the phrase "Houston Cigar Week" to prevent others from using it. An attempt to reserve senior use in a mark does not qualify as continuous commercial use. 15 U.S.C. § 1127 (defining "use in commerce" as "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a mark"); *see also Perry*, No. 20-30418, at 11

("Section 1127 appears to impose two requirements—use in commerce and bona fide use or use not merely to reserve a right."); *Picturecode, LLC v. Digital Ninja, LLC*, No. 10-CV-188, 2010 WL 11601563, at *3 (W.D. Tex. Sept. 7, 2010) (first use was not established by "the disingenuous use of a trademark as a mere attempt to reserve the mark for later utilization"). Papillion's three stixx_and_stonez Instagram account posts mentioning Houston Cigar Week are, at most, mere preparation to do business, not continuous commercial use.[5]

And, as explained further below, the court finds and concludes that these three posts are evidence of the defendants' attempts to appear to be the senior user, not that they were the senior user. Papillion's testimony about the posts was not credible. The posts are evidence that the Alliance, not the defendants, was the senior user of the trademarks. The defendants' three Instagram posts are suspect and lack reliability and credibility on other grounds as well. The defendants submitted incomplete versions of each post. The Alliance submitted complete versions. The timing and the content of the changes between the complete and incomplete posts further undermine Papillion's credibility and the defendants' position.

---

[5] *See Tuccillo v. Geisha NYC, LLC*, 635 F. Supp. 2d 227, 231 (E.D.N.Y. 2009) ("[The plaintiff's] only indicia of use of the word 'Japonais' is the purchase of signs, which is hardly indicative of a functioning restaurant utilizing the mark in commerce."); *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 361 (11th Cir. 2007) (a sign displayed on the interior wall of the plaintiff's restaurant was not a valid service mark as a matter of law); *Silberstein v. Fox Ent. Grp., Inc.*, 424 F. Supp. 2d 616, 633 (S.D.N.Y. 2004) (presales promotion of a licensing concept did not establish priority of use for a character name); *Maritec Indus. Inc. v. Sterling Powerboats Inc.*, No. 5:04-CV-25, 2004 WL 3403353, at *4 (M.D. Fla. 2004) ("The preliminary steps taken by the Defendant to launch its business, including designing its Sterling boats, buying business cards and letterhead with the Sterling logo, and meeting with individuals to plan marketing and business strategies, does not constitute use of the Sterling mark in commerce."); *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 186 F.3d 311, 317 (3d Cir. 1999) (no continuous commercial use when the plaintiff "existed for only about three months . . . , had made but one sale in that period, had not invested any monies in public advertising or expanded beyond its initial set-up, and had made a relatively small number of sales presentations"); *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1052 (9th Cir. 1999) ("[M]ere use in limited e-mail correspondence with lawyers and a few customers is not" sufficient to show continuous commercial use).

###### i.      The October 2019 Instagram Post and the February 2021 Edit

The first post, from October 30, 2019, shows a brief video that displays the words "Black Texas Cigar Festival."  The caption below the video reads:

> COMING TO HOUSTON THIS JULY 2020
> Houstoncigarweek
> Black Texas Cigar Festival hosted by @Stixxandstonez @smokingdisciples @duchessoftheleaf

(Docket Entry No. 43-2).

The version of this post that the defendants submitted, and that Papillon testified was an accurate copy, does not show an expanded version of the Comments section. (Docket Entry No. 43-2). The complete version that the Alliance submitted does show the Comments section. (Docket Entry No. 47-38). At the bottom of the Comments section, the words "Edited - 5w" appear. (*Id.*). The post was last accessed on March 29, 2021, meaning that the post was edited the week of February 22, 2021.

Papillon agreed that "5w" means five weeks. He agreed that an Instagram account holder, such as himself, can edit an Instagram post after it has been posted. If the Instagram account holder is the only one with password access, the account holder is the only plausible source of the edit.

An edited post will show "Edited" followed by an abbreviation for an amount of time, such as 5s, 6m, 7d, or 8w. Papillon speculated—without basis—that the five weeks could have been calculated from any date. He is incorrect. The amount of time is calculated from the date of the edit until the date the post is viewed. For example, a post that was changed six days before the date it was accessed or viewed shows "Edited - 6d" in the Comments section. A post that was changed eight weeks before the date it was accessed or viewed shows "Edited - 8w" in the Comments section. *See* Fed. R. Civ. P. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute."); *Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 263 n.5 (S.D.N.Y. 2018) (taking

judicial notice of "access mode in the Lyft application"); *KS Cayton, LLC v. Hobby Lobby Stores, Inc.*, No. 6:15- CV-655, 2016 WL 7826650, at *4 n.1 (E.D. Tex. Sept. 12, 2016) ("[T]he Court takes judicial notice of the fact that Pinterest is a social media website that functions as a virtual bulletin board."); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 834 (S.D.N.Y. 2012) (taking judicial notice of "Facebook's current website" and "the Facebook sign-up process").

The court finds that the "Edited - 5w" notation means that the post was edited the week of February 22, 2021. This puts the edit at less than a week before the defendants moved for a preliminary injunction. The October 30, 2019, date of the post is suspicious, falling four weeks before the Alliance began marketing its Houston Cigar Week event. The phrase "Houston Cigar Week" appears on two more stixx_and_stonez Instagram posts within days of October 30, 2019, but it does not appear on the stixx_and_stonez Instagram account again until nearly a year later. The video shown in the post advertises the Black Houston Cigar Festival, not Houston Cigar Week. Only the caption mentions the Houston Cigar Week. Papillion admitted at the hearing that pictures and videos cannot be edited, but that captions can. The court finds and concludes that this caption was edited.

When questioned at the hearing about the "Edited - 5w" phrase, Papillion denied editing the post. (Docket Entry No. 47-38). His denial is not credible. He then speculated, with no basis, that it could have been done by hackers or someone else, but he testified in his deposition and again in the hearing that he was the only person with password access to the stixx_and_stonez account. (Docket Entry No. 47-40 at 43:10–14).

Papillion offered conflicting reasons for the different event titles in the post. He testified that he selected two event names—Houston Cigar Week and Black Texas Cigar Festival—so that he could later pick between them. Papillion testified that the Black Houston Cigar Festival was the

group that would host the event, not the event itself. But this explanation is inconsistent with the statement in the post that "@Stixxandstonez @smokingdisciples @duchessoftheleaf" would host the advertised event. (Docket Entry No. 43-2). Papillion also testified that he chose to mention Houston Cigar Week because he was worried about protecting his trademark rights, even though he did not file a formal trademark application until over year later. (Docket Entry No. 47-14).

The court does not find Papillion's vacillating and unsupported testimony credible.  The court finds and concludes that the captions on the post, (Docket Entry No. 43-2), were altered after the fact, to make it appear that the defendants were the senior users of the Houston Cigar Week trademark.

### ii.      The Second October 2019 Post and February 2021 Edit

The second disputed post also first appeared on Papillion's stixx_and_stonez Instagram page on October 30, 2019.  (Docket Entry No. 43-1).  The post shows four videos.  The first says "Coming Soon"; the second says "Duchess of the Leaf"; the third says "Smoking Disciples"; and the fourth says "Stixx & Stonez."  (Docket Entry Nos. 43-1, 41-5).  The caption beneath the videos reads as follows:

> COMING TO HOUSTON THIS JULY 2020
> Houston Cigar Week or
> Black Texas Cigar Festival hosted by
> @Stixxandstonez

(Docket Entry No. 43-1).

The defendants submitted an incomplete version of the post, with the Comments section hidden. The Alliance submitted a complete version. (Docket Entry No. 47-37). This post also shows "Edited - 5w" at the bottom of the Comments section. The unedited version is shown in a screenshot taken on October 30, 2019, by Grant. (Docket Entry No. 47-39). The unedited version refers to the "Black Texas Cigar Festival." The words "Houston Cigar Week" are missing. The

"5w" date means that the edit was made five weeks before it was accessed on March 29, 2021, which is the week of February 22, 2021. (Docket Entry No. 47-37).

When confronted with this edited version and with the Alliance's unedited version of the post, Papillion first denied that the post had been edited. He then admitted the fact of the edit, but he denied editing the post himself and denied that the words "Houston Cigar Week" had been added. As noted, Papillion testified at his deposition and at trial that no one else has the password to his stixx_and_stonez Instagram account. He speculated that a hacker could have made the edit. The court does not find this explanation plausible.

It appears there was one other change to the post. The unedited version of the post mentions "@smokingdisciples @duchessoftheleaf," while the edited version does not. The significance of this change was not explored at the hearing, but the change by Papillion is consistent with the alliance between him and Gilbert, the vice-president of Stixx and Stonez.

Papillion also testified that the posts were simply different posts. He pointed out that the defendants' version of the post showed "Liked by spadescigars and 25 others," while the Alliance version showed only "26 Likes." (*Compare* Docket Entry No. 43-1, *with* Docket Entry No. 47-37). But as publicly available information shows, a person viewing a third-party Instagram user's post can see when another user "likes" the third party's post, but only if that person follows that user. A person who does not follow a particular user cannot see if or when that user likes the third party's post. For example, if User A follows User B, and User B "likes" User C's post, User A will see that User B liked User C's post. If User A does not follow User B, then User A cannot see that User B liked User C's post.

The defendants' version of the post was accessed with Papillion's stixx_and_stonez account, and Papillion follows spadescigars. The defendants' version shows "Liked by

23

spadescigars," because Papillion follows that Instagram user. The Alliance version was accessed through the account of one of the Alliance's counsel, who does not follow spadecigars. The different accounts used to access the post explain why the defendants' version shows that "spadecigars" liked the post, while the Alliance version did not. Papillion's testimony at this point was not credible. He has several Instagram accounts, and he testified to making over 10,000 posts. His incorrect information about the "liked by" feature, which he argued in support of his claim, further undermines his credibility.

The Alliance also submitted a version of the post that appeared on Papillion's Stixx and Stonez Facebook business account. (Docket Entry No. 47-41). The Facebook post was made on the same day, October 30, 2019, and it shows the same four videos and a nearly identical caption. (*Id.*). The Facebook post does not mention "Houston Cigar Week," only "Black Texas Cigar Festival." (*Id.*). Papillion testified in his deposition that he frequently uses the same posts for Instagram and Facebook. He testified at the hearing that he did not include a reference to the "Houston Cigar Week" in his Facebook post because he did not want people to "steal his ideas." The court does not find this explanation credible. No evidence in the record suggests that a Facebook business page is more private than an Instagram account.

### iii.    The November 2019 Post and December 2020 Edit

The third disputed post on Papillion's stixx_and_stonez Instagram account first appeared on November 3, 2019.  (Docket Entry No. 47-36).  The defendants and the Alliance submitted versions of the post.  The defendants' black-and-white version shows the word "Festival" in the picture.  (Docket Entry No. 49 at 23).  The caption below the picture reads:

COMING TO HOUSTON THIS JULY 2020
Houston Cigar Week or Black Texas Cigar Festival
Hosted by @Stixxandstonez @duchessoftheleaf

(*Id.*).  The defendants' version does not show the date of the post.

24

The Alliance submitted what appears to be a complete version of the same post.  The picture in the post shows the words "Coming July 2020 Black Texas Cigar Festival."  (Docket Entry No. 47-36).  The date on the post is November 3, 2019.  The Alliance's version, which was accessed on March 30, 2021, also shows the phrase "Edited - 14w."  (*Id.*).  Fourteen weeks before March 30, 2021, is the week of December 22, 2020.  This was the week after Papillion was served in this litigation.  (Docket Entry No. 8).  The credible evidence is that he edited the post to make it appear that he was the first user, to support his litigation position.

In sum, the three Instagram posts do not show first use. The posts were made across five days and viewed by a limited number of people. They were not accompanied by other commercial conduct, such as soliciting sponsors, contacting venues, or advertising, until after the Alliance began heavily marketing its own Houston Cigar Week event. Each post was edited in what appears to be a self-serving way. The timing of the edits was very close to significant litigation events. The October 2019 posts were edited less than a week before the defendants' cross-motion for a preliminary injunction; the November 2019 post was edited the same week that Papillion was served with process. While the court does not have unedited versions of every post, the unedited version of the second October 2019 post shows that the only apparent edit was the addition of the words "Houston Cigar Week." Papillion could not credibly explain the edits.  He changed his explanations multiple times, and several of his explanations were demonstrably incorrect.  These posts do not show the defendants' first use in commerce of the trademarks.

### iv.    The Corporate-Formation Documents

The defendants also attempted to establish first use by registering the houstoncigarweek.com domain name and filing with the Texas Secretary of State a certificate of formation and an assumed-name certificate.  (Docket Entry No. 47-15).  Domain names and

corporate-formation documents do not trump a senior user's trademark rights. *See Kastanis v. Eggstacy LLC*, 752 F. Supp. 2d 842, 850 (N.D. Ill. 2010) ("Defendants' incorporation of an entity named Yolk, Inc. that then did business under the name Solo 1530 is neither evidence nor proof that Defendants first used the word 'yolk' in commerce in the relevant market."); *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 190 (D.D.C. 2005) ("[T]he mere registration of a domain name with a domain name registrar, by itself, is simply insufficient to confer trademark protection under the Lanham Act."); J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 16:12 (5th ed. 2021) ("The mere act of incorporation alone does not establish priority of use of the corporate name as a mark.").  Under Texas law, a business name used in corporate-formation documents "does not authorize the use of a name in [Texas] in violation of a right of another under" either "the Trademark Act or 1946" or "common law." TEX. BUS. ORGS. CODE ANN. § 5.001.

The Alliance was the senior user of the Houston Cigar Week trademark.

### 2. The Houston Cigar Alliance Trademark

The defendants also claim to be the first users in commerce of the Houston Cigar Alliance trademark. The evidence is clear that the Alliance used the Houston Cigar Alliance trademark in commerce before the defendants, acquiring senior-user rights.

The credible testimony and evidence at the preliminary-injunction hearing showed that the Alliance has operated under the name "Houston Cigar Alliance" since 2018. From 2018 to October 2019, it organized and promoted several money-making events, including the Mid-Fest in 2018 and 2019 and the Houston Cigar Smoke Fest in August 2018. Papillion testified that from the date he joined the Alliance until he was removed in October 2019, the Alliance members jointly made decisions on event titles, and that no one member was in control. He and Gilbert also testified that the Alliance voted to remove him from the group in October 2019. The Alliance signed a formal

partnership agreement in October 2019 and continued marketing events to the public under the Houston Cigar Alliance trademark.

Papillion argues that two categories of evidence show that he was the prior user of the "Houston Cigar Alliance" mark. The first category is the assumed-name certificate and certificate of formation he filed with the Texas Secretary of State in December 2020 under the name "Houston Cigar Alliance." These documents, filed in December 2020, came long after the Alliance began using the trademark in commerce in 2018. And, as noted above, corporate-formation documents do not trump the trademark rights of a prior user. *See Kastanis*, 752 F. Supp. 2d at 850.

The second category of evidence Papillion points to is a post on his personal Instagram account advertising an event by the Alliance in July 2018. (Docket Entry No. 43-3). This post does not show that Papillion coined, was the first to use, or continuously used the words "Houston Cigar Alliance." On the contrary, this post advertises an event coordinated by five listed groups—SODO, Stixx and Stonez, BIC Crew, Westside Smokers, and For Smokers Only. The post shows that, at the time, these groups were organized under the Houston Cigar Alliance name. The caption beneath the advertisement confirms this reading by listing the members of the Alliance: "The Houston Cigar Alliance (Stixx and Stonez, SODO, BIC, Westside Smokers and For Smokers Only)." (*Id.*). The Houston Cigar Alliance is not tied to Papillion, and the phrase does not appear in other Papillion-controlled social-media posts at the same time.[6]

---

[6] The defendants did not argue that Papillion, as a departing member of the Alliance, had the right to continue using the Houston Cigar Alliance trademark. Even if they had, the record would not support the argument. Courts typically apply three factors when determining whether a group or departing member owns a trademark: "(1) the parties' objective intentions or expectations; (2) who the public associates with the mark; and (3) to whom the public looks to stand behind the quality of goods or services offered under the mark." *Lyons v. Am. Coll. Veterinary Sports Med. & Rehab.*, 859 F.3d 1023, 1029 (Fed. Cir. 2017). This evidence signals that both the Alliance and Papillion intended the Houston Cigar Alliance mark to remain with the Alliance. *See Life After Hate, Inc. v. Free Radicals Project, Inc.*, 410 F. Supp. 3d 891, 905 (N.D. Ill. 2019) ("In both cases, the evidence shows that the parties intended that the groups would operate using the name 'Life After Hate,' not that [the departing member] would render his own personal services

The Alliance was the first user of the "Houston Cigar Alliance" mark.

## C.     Likelihood of Confusion

"Likelihood of confusion is synonymous with a probability of confusion, which is more than a mere possibility of confusion." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1988) (citing *Blue Bell Bio-Med v. Cin-Bad, Inc.*, 864 F.2d 1253, 1260 (5th Cir. 1989)). The Fifth Circuit has provided eight nonexhaustive "digits of confusion" for courts to consider in determining whether a likelihood of confusion exists:

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, . . . (7) any evidence of actual confusion[,]' . . . [and] (8) the degree of care exercised by potential purchasers.

*Springboards to Edu., Inc. v. Hous. Indep. School Dist.*, 912 F.3d 805, 811 (5th Cir. 2019) (quoting *Streamline Prod. Sys., Inc.*, 851 F.3d at 453); *see also Perry*, No. 20-30418, at 6.

"[A]ctual confusion is 'the best evidence of a likelihood of confusion.'" *Perry*, No. 20-30418, at 8 (quoting *Xtreme Lashes*, 576 F.3d at 229). When a defendant uses a plaintiff's exact marks, "a thorough analysis of the digits of confusion is unnecessary, and a presumption of confusion exists." *Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 540 (S.D. Tex. 2013). The parties acknowledged that they are using identical "Houston Cigar Alliance" and "Houston Cigar Week" trademarks.  This is enough for a presumption of confusion.  *Id.*

The digits of confusion also point towards a likelihood of confusion.  The marks are virtually identical; the parties are direct competitors organizing the same type of event; the targeted consumers are nearly identical; and the parties use the same type of advertising on social media. *See Maritec Indus., Inc.*, 2004 WL 3403353, at *4 ("[T]here is evidence of actual consumer

---

using the mark.").  The evidence also shows that the public associates the phrase "Houston Cigar Alliance," as well as the quality of Alliance-organized events, with the actual Alliance, not Papillion.

confusion over the mark Sterling, the marks used by the parties are identical, the mark is used by the parties in connection with a similar product, and the parties utilize similar marketing methods.").

Grant and Presley both credibly testified that the defendants' competing event and use of the Alliance name caused actual confusion among consumers. The Alliance also submitted evidence of actual confusion among consumers, venues, sponsors, and potential sponsors. The Alliance submitted messages from several potential customers who were confused about whether the two events were the same, where to buy tickets, and when the correct event was being held. For example, one potential customer sent a message to the Alliance asking if the tickets he bought on Eventbrite were valid. (Docket Entry No. 47- 24). The Alliance had to inform him that he bought tickets to the defendants' event and that the Alliance sold tickets only through houstoncigarweek.org, not Eventbrite. (*Id.*). Another potential customer sent an email to the Alliance asking which event was the "official" Houston Cigar Week. (Docket Entry No. 47-25; *see also* Docket Entry No. 47-27). Another asked the Alliance if the event was from May 12 to 16, 2021, because the dates for the parties' competing events were different. (Docket Entry No. 47- 26).

The Alliance also presented evidence that a representative for Marsau and LaTisha Scott, TV personalities associated with the Oprah Winfrey Network, asked for information about sponsoring the Houston Cigar Week. (Docket Entry No. 47-28). After the Alliance responded with a sponsorship-information package, it was informed that "the Scotts [had] made contact with [Elias] Papillion and gotten the ball rolling." (*Id.* at 3).

The Alliance also submitted evidence of confusion among ambassadors—social-media and local-celebrity promoters—for Houston Cigar Week events and locations. One ambassador, after

29

agreeing to promote the Alliance's Houston Cigar Week event, mistakenly posted a promotion on the defendants' Houston Cigar Week Instagram page. (Docket Entry Nos. 47-29, 47-30). The owner of Five Central, a venue scheduled to host a party during the Alliance's Houston Cigar Week, mistakenly sent a mass text message advertising the dates for the defendants' Houston Cigar Week event, not the Alliance's. (Docket Entry No. 47-31).

This evidence, along with the identical marks used by both parties, establishes actual consumer confusion over the two Houston Cigar Week events and over which group was the Houston Cigar Alliance.

### D.      Irreparable Harm

The Fifth Circuit has held that irreparable injury is presumed as a matter of law whenever there is a likelihood of confusion. *See Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) ("All that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion – injury is presumed."). Some courts have held that this presumption has been called into question. *See T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F. Supp. 2d 888, 928 (S.D. Tex. 2014) ("The case law suggests that in this circuit, in a Lanham Act case, the presumption is somewhere between shaky and reaffirmed."). But courts have generally held that a likelihood of confusion is tantamount to a showing of irreparable harm because the plaintiff no longer has control over the quality of its products or services. *See id.* at 926 ("The Fifth Circuit stated that 'there seems little doubt that money damages are inadequate to compensate [the owner] for continuing acts of infringement.'"); *Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., LLC*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999) ("When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services

constitutes an immediate and irreparable injury, regardless of the actual quality of those goods or services.").

The parties agree that irreparable harm has been shown, and the record supports this finding and conclusion.  The Alliance showed not just consumer confusion, but confusion among sponsors, important potential sponsors, event ambassadors, and venues that are scheduled to host Houston Cigar Week events.  Monetary damages would not replace lost sponsorships from TV personalities who could widely promote the event, promoters and ambassadors who accidentally tout the wrong event, and consumers who buy tickets for the wrong week.  These harms are likely to extend into the future if the Alliance intends to hold Houston Cigar Week in 2022 and beyond.

The Alliance has shown irreparable harm if the defendants are not enjoined from using the marks "Houston Cigar Week" and "Houston Cigar Alliance."

**V.      Conclusions of Law**

The court enters the following conclusions of law:

- There is a substantial likelihood of success on the merits of the Alliance's trademark-infringement claim. *See Paulsson Geophysical Servs.*, 529 F.3d at 309.

    o  The Alliance's "Houston Cigar Week" and "Houston Cigar Alliance" marks are eligible for protection under the Lanham Act.

    o  The Alliance is the senior user of both marks.

    o  There is a likelihood of confusion between the Alliance's marks and the defendants' use of the same marks in organizing, marketing, and advertising cigar events.

    o  There is a substantial likelihood of irreparable injury to the Alliance without adequate legal remedy if the injunction does not issue.

31

- The Alliance's threatened injury if the court were to deny the injunction outweighs the harms to the defendants should the injunction issue.

- The injunction will not disserve the public interest.

The Alliance's motion for a preliminary injunction, (Docket Entry No. 15), is granted. The defendants are prohibited, effective immediately and for the remainder of this litigation, from using the "Houston Cigar Week" and "Houston Cigar Alliance" marks, as well as similar marks, such as "Houston Cigar Week LLC," "Houston Cigar Alliance LLC," "Official Houston Cigar Week," or "Houston Cigar Alliance DBA." *See Future Proof Brands, LLC v. Molson Coors Beverage Co.*, 982 F.3d 280, 294 (5th Cir. 2020) ("[W]e don't require litigants to show third-party usage of the plaintiff's entire mark. Instead, third-party usage involves the portion of the plaintiff's mark that the defendant also uses."). The defendants' motion for a preliminary injunction, (Docket Entry No. 20), is denied.

The Alliance must file a proposed preliminary injunction order, conditioned on posting a $2,000.00 surety bond, no later than April 16, 2021. The Alliance must file an application for a permanent injunction no later than June 25, 2021. A hearing on a permanent injunction will be held beginning on **September 13, 2021 at 10:00 a.m.**

SIGNED on April 14, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge

32